UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-379 (RWR) |
| | : | |
| v. | : | |
| | : | |
| ISRAEL PEREZ-MENDOZA | : | VIOLATION: |
| also known as Daniel Losano Gonzalez, | : | 8 U.S.C. § 1326(a) and (b)(2) |
| | : | (Unlawful Reentry of a |
| | : | Removed Alien after Conviction |
| | : | for an Aggravated Felony) |
| Defendant. | : | |
| | : | **UNDER SEAL** |

**GOVERNMENT'S MOTION FOR DEPARTURE FROM
GUIDELINE SENTENCE AND MANDATORY MINIMUM SENTENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to find that the defendant, Israel Perez-Mendoza, aka Daniel Losano Gonzalez, is entitled to the benefits of a sentencing departure as provided by Title 18, United States Code, § 3553(e) and § 5K1.1 of the United States Sentencing Guidelines. These provisions authorize the Court, upon motion of the government, to impose a sentence below the minimum which would otherwise be required by statute and the sentencing guidelines. The United States submits this motion based on the substantial assistance which the defendant has rendered in the investigation and prosecution of other persons.

I.   **Procedural and Factual Background**

The defendant, Israel Perez-Mendoza, pled guilty in the instant case, on or about November 3, 2005, to the charge of illegal reentry after conviction for an aggravated felony, in violation of 8 U.S.C. Sections 1326(a) and (b)(2). Mr. Perez-Mendoza was arrested on this charge on February

1

15, 2005. He has been held without bond in this case since that time.

Mr. Perez-Mendoza is a native and citizen of Mexico who previously had been deported from the United States in February of 2000. At the time he was deported, Mr. Perez-Mendoza had already been convicted of two counts of second degree assault in November of 1999 in Prince Georges Country, Maryland.

After being deported in 2000, Mr. Perez-Mendoza later re-entered the United States in October of 2002. Mr. Perez-Mendoza was arrested again at this time. On or about April 22, 2003, Mr. Mendoza was convicted in United States District Court, District of Maryland, for Unauthorized Reentry of a Deported Felon After Conviction for an Aggravated Felony. In February of 2004, Mr. Perez-Mendoza was again deported.

On or about February 15, 2005, the defendant was found at the Superior Court Courthouse, in the District of Columbia, and was arrested for entering the United States without being admitted or paroled by an Immigration Officer. The defendant was fingerprinted, photographed, and placed into deportation proceedings at that time. On or about March 24, 2005, an ICE agent reviewed records maintained by ICE and found no record that the defendant had applied for permission from the Attorney General or the Secretary of Homeland Security, or his delegate, to reenter the United States.

The government filed related-case papers for the instant case, connecting it to the Congress Park matter. The reason for this is that Mr. Perez-Mendoza, while incarcerated inside of D.C. Jail in June of 2005, was an eyewitness to an incident where two members of the charged Congress Park conspiracy – David Wilson and Desmond Thurston – were seen attempting to pass 2 ziplocks of heroin to each other. The government considered introducing this evidence during the recent

2

Congress Park trial as evidence of association and an act in furtherance of the charged conspiracy.

In fact, Mr. Thurston pulled aside Mr. Perez-Mendoza just as he was about to leave the housing unit where they both resided and gave him 2 ziplocks of heroin for "his man" David Wilson (this is how Mr. Thurston referred to Mr. Wilson as he gestured towards Mr. Wilson, who was waiting just outside the housing unit). Mr. Perez-Mendoza, being at the wrong place at the wrong time, accepted the 2 ziplocks as they were quickly given to him (the government has no reason to believe that Mr. Perez-Mendoza knew he was receiving heroin at the time Mr. Thurston handed him the ziplocks). Just as this hand-off happened, a correctional officer, who was witnessing the incident, grabbed Mr. Perez-Mendoza and caught him, literally red-handed. At this time, Mr. Thurston fled into a shower stall in the housing unit, and Mr. Wilson also fled from the outside hallway where he was standing and waiting.

In addition to Mr. Perez-Mendoza, Mr. Thurston was also quickly apprehended and written up for this offense. Mr. Wilson was not identified or apprehended soon enough to be written up (D.C. Jail policy is that a write-up has to happen within 24 hours of an offense).

This incident was also witnessed by another cooperating witness in this case, who corroborates many of the details provided to the government by Mr. Perez-Mendoza.

The government concurs with the analysis of the Presentence Report writer, Ms. Moses-Gregory, who has concluded that pursuant to the Federal Sentencing Guidelines, the defendant faces a suggested guideline range of imprisonment of 57 to 71 months.[1] The defendant has already been

---

[1] The defendant objects to paragraph 19 of the Pre Sentence Investigation Report which adds 16 points to Mr. Perez-Mendoza's Offense Level computation pursuant to USSG Section 2L1.2(b)(1)(A)(ii). However, a finding that Mr. Perez-Mendoza's prior felony triggers this 16 point bump in the instant case seems correct in light of the fact that the definition of a "crime of violence" includes: " . . any offense under federal, state, or local law that has as an

held without bond for approximately 36 months relating to the instant case.

    **II.**    <u>**Nature and Extent of Cooperation**</u>

Mr. Perez-Mendoza has provided substantial assistance to the government since his arrest in connection with this case.

Mr. Perez-Mendoza debriefed with the government on several occasions. Each time, we found Mr. Perez-Mendoza to be forthcoming and truthful regarding the information that he provided to us. Although the government ultimately decided not to call Mr. Perez-Mendoza as a witness during our trial, this was purely for tactical reasons, having nothing to do with Mr. Perez-Mendoza's veracity or credibility. In fact, Mr. Perez-Mendoza's account of the incident that he would have been asked to testify about was heavily corroborated – by both another cooperating witness and the correctional officer who apprehended him.

Indeed, on two separate occasions during the Congress Park trial, Mr. Perez-Mendoza sat down with the undersigned Assistant United States Attorney for "prep sessions" in anticipation of his testifying at trial. At all times, Mr. Perez-Mendoza was ready, willing and able to testify for the government at trial, had it been needed. Mr. Perez-Mendoza understood and accepted the potential safety risks to which this could expose him.

In addition, during the summer of 2005, the government was engaged in a series of detention hearings involving defendant David Wilson. These hearings were held both before Magistrate Judge Robinson as well as this Court. During the hearings before this Court, the

---

element the use, or threatened use of physical force against the person of another." *See* USSG Section 2J.1.2 Commentary 1(B)(iii). The underlying set of facts relating to the defendant's prior felony – as set forth by the defendant himself in his written objections – seems to satisfy this requirement.

above-referenced jailhouse incident was raised by the government as one of the reasons supporting Mr. Wilson's continued pre-trial detention. The government made its proffers to the Court relating to this issue in part based on information provided by Mr. Perez-Mendoza to the government. As a result of these hearings, Mr. Wilson was ultimately held without bond. In addition, Mr. Perez-Mendoza's identity (and therefore safety) was compromised.

Gonzalez has no other connection to the Congress Park case, and therefore has not been able to provide any additional cooperation or assistance to the government. That said, Mr. Perez-Mendoza has done everything asked for him by the government and therefore deserves, in our judgment, credit for providing substantial assistance to the government.

Mr. Gonzalez has eight siblings or half-siblings, six of whom currently live in the United States. At the time of his arrest in the instant case, Mr. Gonzalez was employed at a furniture company earning $6.50 an hour. Mr. Gonzalez has one child, who also lives in the United States. At the time of his arrest in the instant case, Mr. Gonzalez was in a relationship with the child's mother, and had contributed to the financial support of the child.

It is the government's understanding that Mr. Perez-Mendoza will be deported from the United States after he completes his sentence in this case, regardless of what period of incarceration he ultimately receives.

In light of the above, the government respectfully recommends that the defendant be sentenced to a period of incarceration of 36 months. The government respectfully submits that such a sentence would strike an appropriate balance between punishing the defendant, yet recognizing the assistance he provided to the government as well as the fact that he will be deported in any event after he completes serving his sentence in the instant case.

WHEREFORE, the Government respectfully requests that the Court impose a sentence below the applicable Sentencing Guideline range and below any applicable statutory mandatory minimum.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498-610

_____
GLENN S. LEON
Assistant United States Attorney
New York Bar
555 4th Street, N.W., Room 4112
Washington, DC  20530
(202) 305-0174


CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been sent by facsimile (301-320-3948) to counsel for the defendant, Joanne Roney Hepworth, Esq., 601 Pennsylvania Avenue, NW, Suite 900, South Building, Washington, D.C.  20004, this 22nd day of January 2008.

_____
ASSISTANT UNITED STATES ATTORNEY